## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOTCOM DISTRIBUTION CORP., <br><br>     Plaintiff,<br><br>vs.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA and THE PHOENIX INSURANCE COMPANY,<br><br>     Defendants. | Civil Action No.: 2:20-cv-17871 (CCC) (MF) |

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Civil Rule 56.1, Plaintiff, Dotcom Distribution Corp. ("Dotcom") submits the following material facts as to which there is no genuine dispute:

1. Dotcom is a third-party logistics specialist based in New Jersey that receives, fulfills and ships orders from its warehouse for online vendors. *See* Declaration of Maria Haggerty, Dated November 23, 2021, attached as Exhibit A, at ¶ 3.

2. From 2012 to 2019, Travelers sold insurance policies to Dotcom, including but not limited to: Policy No. QT6600511B104TIL12 (4/18/2012 to 4/18/2013); Policy No. QT6600511B104TIL13 (4/18/2013 to 4/18/2014); Policy No. QT6600511B104TIL14 (4/1/2014 to 4/1/2015); Policy No. QT6600511B104TIL15 (4/1/2015 to 4/1/2016); Policy No. QT6600511B104TIL16 (4/1/2016 to 4/1/2017); and Policy No. P-660-3J396446-PHX-18 (4/1/18 to 4/1/19) (each individually a "Policy," and collectively with each and every other policy Travelers sold to Dotcom since 2012, the "Policies"). A true and correct copies of Policy No. QT6600511B104TIL12 (4/1/2012 to 4/1/2013) and Policy No. QT6600511B104TIL14 (4/1/2014 to 4/1/2015) are attached hereto as Composite Exhibit B.

3. Travelers agreed to "pay those sums that you become legally obligated to pay as damages as a warehouse operator for direct physical loss or to damage to Covered Property from any of the Covered Causes of Loss." *See* Exhibit B at 1 of 9.

4. "Covered Causes of Loss" is defined in the Policy as "your liability for DIRECT PHYSICAL LOSS OR DAMAGE to Covered Property except those causes of loss listed in the Exclusions." *See id.* at 2 of 9.

5. "Covered Property" is defined in the Policy as "property of others that you have accepted under a warehouse receipt or a written contract for storage within any 'warehouse' shown in the Declarations." Dotcom's Warehouses are shown on the Declarations. *See id.* at 1 of 9.

6. The Policy confirms Travelers has "the right and duty to defend you against any 'suit' seeking such damages." *See id.*

7. The Policy defines a "suit" to mean a "civil proceeding in which damages because of loss of or damage to Covered Property to which this insurance applies are alleged[.]" *See id.* at 8 of 9.

8. The definition of "suit" specifically includes "[a]n arbitration proceeding in which such damages are claimed and to which you must submit[.]" *See id.*

9. The Policy requires Travelers to "defend [Dotcom] against any 'suit' seeking such damages." *See id.* at 1 of 9. The Policy provides that the "duty to defend ends when [Travelers] have used up the applicable Limit of Insurance in the payment of judgment or settlement." Such a policy is sometimes referred to as a "defense outside of limits" policy because the defense costs do not reduce the policy limit available to pay a judgment or settlement (or which would be available to apply to a separate claim). *Id.*

10. On November 9, 2018, Adore Me, Inc. ("Adore Me") sent a letter to Dotcom, asserting it had been harmed by Dotcom in various ways (the "Adore Me Letter"). A copy of the Adore Me Letter is attached hereto as Exhibit C.

11. The Adore Me Letter alleged, inter alia, "DotCom has failed to reimburse Adore Me for all items lost or damaged resulting from its errors in receiving and shipping …[f]or example, a significant amount of Adore Me's inventory was 'scrapped' because it was stained or dirty….and there was evidence that forklifts had destroyed cartons containing numerous products. DotCom's failure to keep the inventory sufficiently organized...also caused products to be lost or damaged." *See id.*

12. Adore Me alleged Dotcom's "misrepresentations and repeated failures to fulfill its contractual obligations" for contracts and amendments dated March 11, 2013, November 15, 2015, March 31, 2017, October 16, 2017 and December 17, 2017. *See id.* at p. 1.

13. Dotcom timely gave notice of the Adore Me Letter to Travelers in February 2019. *See* Exhibit A at ¶ 5.

14. Travelers' internal records reveal that upon receiving the notice of claim from Dotcom, Travelers recognized that the Adore Me letter alleged that Dotcom had caused property loss and damage, the claim fell within the Travelers policy period and the claim triggered the insuring agreement under the Travelers policy. A copy of the claim note is attached hereto as Exhibit D.

15. On February 18, 2019, Mr. Roark made an entry in the claim notes stating: "***Adore Me sent Dot Com a letter recently claiming that Dot Com…damaged or loss [sic] some of the stored inventory. Discussed with Rob that only the lost or damaged product would be covered as direct physical loss on the warehouse policy.***" *See id.*

16. On the same date, Mr. Roark made the following entry:

> Travelers Property Casualty of America is the insuring company. ***The date of loss is within the effective dates of the policy***….The applicable form is the Warehouse Legal Liability form. The insuring agreement is met as Dot Com performed 3PL warehouse operations under written contract to Adore Me….***There is some direct physical loss claimed in the notice letter***, but most claimed is for Breach of Contract for failure to perform contracted business operations and would not be covered. ***An ROR on the latter will be needed if Adore Me continues to press the claim***.

Exhibit. D (emphasis added).

17. Travelers failed to accept coverage of the claim or appoint counsel to Dotcom to defend the claim. *See* Exhibit A at ¶ 6.

18. Travelers failed to communicate a coverage position at all at the time the claim was submitted. *Id.*

19. With no other choice, Dotcom sought to resolve the Adore Me dispute on its own and with the participation of its other insurers. *Id.*

20. Dotcom and Adore Me participated in mediation on June 18, 2019. Dotcom as well as defense attorneys appointed by two of Dotcom's other insurance companies attended the mediation along with representatives of Adore Me. *Id.* at ¶ 7.

21. Travelers had still not issued a coverage determination at that point, more than five months after receiving notice. Travelers did not attend or otherwise participate in the mediation. *Id.* at ¶ 8.

22. In order to attempt to bridge the gap between the parties at the mediation, Dotcom offered to waive hundreds of thousands of dollars in accounts receivable owed by Adore Me, together with the contributions from its insurers who did participate in the mediation. *Id.* at ¶ 9.

23. The mediation was unsuccessful, but the parties subsequently continued to engage in settlement negotiations. *Id*.

24. At the same time, Dotcom continued to seek coverage from and the participation of Travelers in the Adore Me action, as Travelers had yet to even provide its coverage position. Travelers ignored Dotcom's November 12, 2019 letter and did not reconsider its coverage position, continuing its refusal to defend Dotcom. *Id.* at ¶ 10.

25. By letter dated October 21, 2019 from Travelers' claims handler Mark Roark, Travelers denied defense and indemnity coverage under the Policies for the Adore Me claims. A copy of the October 21, 2019 letter is attached hereto as Exhibit E.

26. Thus, eight months after receiving the claim, wherein Dotcom had received a demand from Adore Me that clearly alleged Dotcom caused property damage or loss within the Travelers Policy Period, and Travelers own internal analysis confirmed as much, Travelers denied the claim outright, refusing to even appoint defense counsel under a reservation of rights. *See* Ex. D; Ex. E.

27. Travelers's purported basis for denial was that Adore Me had not alleged any direct physical loss or damage and none of Adore Me's allegations fell within the Travelers policy period, along with various other references to boilerplate, inapplicable exclusions. *See* Exhibit E.

28. In its letter, Travelers stated the following:

- "None of the assertions claimed to have occurred in the Adore November 9, 2018 letter occurred during the policy periods when the Travelers policies were in effect.
- The policies issued by Travelers require Direct Physical Loss to Covered Property. None of the claims asserted by Adore are for Direct Physical Loss.
- Most of Adore's claims are Excluded under Exclusions 2. a, l. and m. quoted above."

*See* Exhibit E, p. 3.

29. Travelers's denial letter references certain headings from the Adore Me Letter in an attempt to support its conclusion that no coverage exists, but omits the heading that reads

"***DotCom Lost and/or Damaged Adore Me's Inventory***" – precisely the type of claim the Policies expressly cover. *Id.*

30. That Adore Me letter explicitly asserts physical damage to the merchandise Dotcom contracted with Adore Me to manage and store. *See* Exhibit C, p. 6-7.

31. Among other things, Adore Me alleges that "inventory was 'scrapped' because it was stained or dirty" and that "forklifts had destroyed cartons containing numerous products." *See id,* p. 6.

32. On October 22, 2019, Adore Me filed a formal Demand for Arbitration against Dotcom (the "Arbitration Demand"), which further set forth the claims of physical damage (with one section even being entitled "Dotcom Lost And/Or Damaged Adore Me's Inventory"). *See* A copy of the Arbitration Demand is attached hereto as Exhibit F.

33. Through the Arbitration Demand, Adore Me avers:

***Dotcom Lost And/Or Damaged Adore Me's Inventory In Breach Of FSA Section 6.3***

47. Dotcom has failed to reimburse Adore Me for items lost or damaged resulting from its errors in receiving and shipping as well as Dotcom' employees' and agents' actions, in violation of FSA Section 6.3, which required that Dotcom assume all risk of physical loss/damage to Adore Me's inventory during the shipping process.

48. Regular reviews of Dotcom's warehouse consistently revealed that the storage conditions of Adore Me's inventory were unacceptable. In fact, some products were stored without the required protective polybags, litter was found mixed in with inventory on multiple occasions, and there was evidence that forklifts had destroyed cartons containing numerous products.

49. As a result, a significant amount of Adore Me's inventory had to be discarded because it was ruined.

*See* Exhibit F.

34. The Adore Me arbitration is a "suit" under the Policies. *See* Exhibit B, at 8 of 9.

35. On November 12, 2019, Dotcom provided notice of the Adore Me Demand for Arbitration to Travelers and requested that Travelers immediately reconsider its denial and assume its duty to defend. A copy of the November 12, 2019 letter attached hereto as Exhibit G.

36. Travelers ignored Dotcom's letter and did not reconsider its coverage position, continuing its refusal to defend Dotcom. *See* Exhibit A at ¶ 10.

37. On October 9, 2020, Dotcom proposed to Travelers that the parties enter into a tolling agreement so as to avoid litigation. A copy of the email dated October 9, 2020 is attached hereto as Exhibit H.

38. The Travelers policy under which Dotcom's claim was made included a "suit limitation" provision that effectively shortened the statute of limitations. *See* Exhibit B.

39. Thus, if Dotcom did not commence an action against Travelers within the suit limitation period set forth in the Travelers policy, Dotcom would be forever barred from bringing a claim for Travelers wrongful denial. *See id.*

40. Travelers rejected Dotcom's tolling agreement proposal, leaving Dotcom no choice but to commence the instant action. A copy of the email dated October 15, 2021 is attached hereto as Exhibit I.

41. On November 2, 2020, Dotcom filed a Complaint against Travelers, asserting claims for: Breach of Contract (Count I), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II), Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 (Count III), and Declaratory Judgment (Count IV). *See* ECF No. 1-1.

42. Damages sought in the Complaint include actual, compensatory, and consequential damages, attorneys' fees pursuant to New Jersey Rule 4:42-9(a)(6) and other applicable New

Jersey law, costs, pre-judgment and post-judgment interest, extra-contractual damages, and punitive damages. *See id.*

43. As the Adore Me action was still underway at the time Dotcom commenced this action, Dotcom sought damages both for Travelers breach of its duty to defend as well as its refusal to indemnify Dotcom for any judgment or settlement amounts that may ultimately be paid to Adore Me. *See id.*

44. Only after being sued did Travelers finally agree to defend Dotcom against the claims made by Adore Me, approximately a year and a half after such claims were first made, and over a year after the Adore Me Arbitration had been commenced. *See* Exhibit A at ¶ 17.

45. By letter dated December 8, 2020, Travelers agreed to defend Dotcom. *Id.*

46. The Adore Me action has been settled and Travelers contributed to the settlement. *See* Exhibit A at ¶ 11.

47. Dotcom was forced to incur the time, effort and expense of facing a mediation and an arbitration against Adore Me without defense counsel appointed to defend against the claims covered under the Travelers Policy. Dotcom was forced to retain coverage counsel to pursue Travelers for coverage under the policy. *See* Exhibit A at ¶ 12.

48. While Dotcom had defense counsel appointed by its other insurers, namely CNA and RSA, which did recognize their duty to defend Dotcom without the need for coverage litigation, such insurers and their appointed counsel were focused on the damages sought by Adore Me, which were covered under CNA's and RSA's respective policies – not the damages covered by the Travelers policy. *See* Exhibit A at ¶ 13.

49. As each appointed counsel was forced to defend the entirety of the case because Travelers had not appointed defense counsel, Dotcom's policy limits under the CNA and RSA

policies were needlessly reduced by defense costs that otherwise would have been borne by Travelers. *See* Exhibit A at ¶ 14.

50. According to RSA and CNA, the amount of such defense costs properly attributable to Travelers totaled approximately $204,000 ($124,000 in fees paid by RSA and $60,000 in fees paid by CNA) at the time of the settlement of the Adore Me action. *See* Exhibit A at ¶ 15.

51. Because Travelers did not participate in the initial settlement negotiations, Dotcom was essentially forced to agree to include forgiveness of an approximately $266,000 account receivable in order to reach a settlement counteroffer figure that could reasonably be expected to advance settlement negotiations. *See* Exhibit A at ¶ 16.

Dated: November 23, 2021

Respectfully submitted,

**FLASTER/GREENBERG PC**

/s/ Arthur R. Armstrong
Arthur R. Armstrong
FLASTER/GREENBERG PC
Commerce Center
1810 Chapel Avenue West
Cherry Hill, NJ 08002
Tel.: 215-587-5608
Email: arthur.armstrong@flastergreenberg.com

Nicole A. Josephy, Esq. (Pro Hac)
FLASTER/GREENBERG PC
2255 Glades Road, Suite 324A
Boca Raton, FL 33431
Tel: (561) 961-4508
Email: nicole.josephy@flastergreenberg.com

*Attorneys for Plaintiff, Dotcom Distribution Corp*

8625068 v1